UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID THOMPSON,<br>CDCR# AU-9252,<br><br>                              Plaintiff,<br><br>v.<br><br>PIA FREE STAFFS JORGE, MOSES,<br>LUNA, RODRIGUEZ, et al.,<br><br>                              Defendants. | Case No.:  25cv1224-LL-VET<br><br>**ORDER SCREENING FIRST AMENDED COMPLAINT UNDER 28 U.S.C. § 1915(e)(2) AND 28 U.S.C. § 1915A(b)** |

On May 12, 2025, Plaintiff David Thompson, currently incarcerated at the Substance Abuse Treatment Facility and State Prison in Corcoran, California, and acting pro se, filed a civil rights complaint under 42 U.S.C. § 1983 arising from events that occurred during his previous confinement at the Richard J. Donovan Correctional Facility in San Diego, California, along with a motion for leave to proceed in forma pauperis. ECF Nos. 1, 2. In the complaint, Plaintiff alleged an Eighth Amendment violation arising from being forced to ride on the back of a forklift, a Fourteenth Amendment violation for failure to properly process his complaints and grievances and a First Amendment violation for retaliation or interference with his grievances. ECF No. 1, at 1–4. On July 10, 2025, the Court granted Plaintiff leave to proceed IFP and dismissed the complaint under 28 U.S.C. §§ 1915(e)(2)

1

& 1915A(b), which require sua sponte dismissal of a prisoner's IFP complaint, or any portion of it, which fails to state a claim or seeks damages from defendants who are immune. ECF No. 4. The Court found the complaint sought to proceed against the California Department of Corrections and Rehabilitation and California Prison Industry Authority, who were not subject to suit under § 1983, and against numerous defendants in their official capacities, which was barred under the Eleventh Amendment, and further found the complaint failed to state a claim for relief against any of the individually named defendants as to any of Plaintiff's three enumerated claims. *See id.* Plaintiff was notified of the deficiencies of his pleading and was granted 45 days leave from the date of the Court's Order to file a First Amended Complaint. *Id.* at 11. After granting Plaintiff's subsequent request for a 60-day extension of time in which to amend, *see* ECF Nos. 5–6, on October 9, 2025, Plaintiff filed a FAC. ECF No. 7.

I.   SUA SPONTE SCREENING UNDER 28 U.S.C. §§ 1915(E) & 1915A(B)

   A.   Standard of Review

Because Plaintiff is a prisoner proceeding IFP, his FAC again requires pre-answer screening pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b). The Court must sua sponte dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of § 1915A is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 907 n.1 (9th Cir. 2014) (quoting *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 681 (7th Cir. 2012)).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) ("Failure to state a claim under § 1915A incorporates the familiar standard applied

in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).") Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Title 42 U.S.C. § 1983 "creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

**B.    Allegations in the FAC**

Plaintiff names sixteen enumerated defendants or groups of defendants, several of whom he does not specifically make factual allegations of federal constitutional deprivations against in his FAC. The named defendants are: PIA Free Staffs Jorge, Moses, Luna, and Rodriguez, Correctional Officer Rodriguez,[1] Maintenance Man Free Staff John Doe, RJD-CF Office of Grievances ("OOG") John/Jane Doe, PIA Grievance Coordinator John/Jane Doe, RJD-CF PIA Head Supervisor John/Jane Doe, PIA Human Resource Supervisor John/Jane Doe, PIA Legal Unit General Counsel Julis Harlan, CDCR Office of Appeals ("OOA") John/Jane Does 1-10, RJD-CF OOG John/Jane Does 1-10, RJD-CF Warden Rafael Acevedo, Internal Affairs Special Agent in Charge Charles Contreras, and CDCR Secretary Jeffrey Macomber.

---

[1] Because Plaintiff names two separate defendants with the surname Rodriguez, *see* ECF No. 7, at 2, correctional officer Rodriguez and PIA Free Staff Rodriguez, the Court will identify the former as correctional officer or CO Rodriguez and the latter as PIA Rodriguez.

|   |   |
|---|---|
| 1 | Plaintiff alleges that on July 30, 2024, while he was working for the CALPIA Laundry at RJD, he "was ordered by both Prison and PIA staff to ride on the rear of a moving forklift as a counter[-]weight." ECF No. 7, at 4. Plaintiff weighed about 250 lbs. at the time and Defendants John Doe Maintenance Man forklift driver and correctional officer Rodriguez both ordered him to "climb onto the back" of the forklift and "to sit as a counter[-]weight" in order to get some new and heavy machinery into the building. *Id.* When Plaintiff, an OSHA certified forklift driver, objected based on the danger and violation of safety standards, the forklift driver stated he was a certified forklift driver and said: "Just don't fall off – You can die." *Id.* at 5. Plaintiff indicates Defendants Jorge, Moses, Luna, CO Rodriguez and the forklift driver all also told him: "Be careful Don't fall off the Forklift You will die." *Id.* at 9. Plaintiff complied and rode on the forklift, as he feared being written up for refusing an order as he had been in the past, and notes "[n]o harness, guard rail, or platform was provided." *Id.* at 5.

Plaintiff also alleges he was directed by Defendant PIA Free Staff Rodriguez, his supervisor, to work on the "dirty" side of the laundry with soiled bedding, despite the fact he had not been properly trained to work with hazardous materials. *Id.* at 6. When PIA Rodriguez told Plaintiff he could go home if he did not work on the "dirty side," Plaintiff replied that he was not going to work with "shit" and was not paid to do it. *Id.* at 6.

Plaintiff alleges Defendant Jorge's job was to hire and fill job assignments within 14 days of a job opening and while there were approximately 25 workers in 70 available positions, when he requested a job assignment change to Defendant Moses' area, both Jorge and Moses refused to move him away from PIA Rodriguez. *Id.* at 5–6, 8. On August 1, 2024, Plaintiff sent a message to his brother to forward to PIA Human Resources in which he raised PIA Rodriguez's direction to work on the "dirty side," as well as PIA Rodriguez's "inappropriate sexual deviant behavior" and Plaintiff's request for a job change. *Id.* at 6. Plaintiff indicates that "[d]ue to the toxic behavior, [he] felt the only recourse was to quit his job." *Id.* at 8.

/// |

4

25cv1224-LL-VET

On August 2, 2024, Plaintiff filed a CDCR 602-1 complaint (Log #603874) with the OOG outlining the same issues as in his message to PIA Human Resources, adding that PIA laundry had "black mold" on the walls and numerous OSHA violations, and relating the forklift incident. *Id.* at 8–9. Plaintiff also called his brother, who contacted OSHA to file a complaint about the lack of a wash station and that Luna told Plaintiff he had filed a safety report every month for over a year without PIA fixing it. *Id.*

On August 7, 2024, Defendant PIA general counsel Harlan responded to Plaintiff's email and enclosed a CALPIA 602-1 complaint form for Plaintiff to file with the local CALPIA Coordinator, which Plaintiff filed on August 10, 2024 (Log #626360). *Id.* at 9. Just prior to that, on August 9, 2024, Defendant RJD-CF OOG Doe gave him a decision of "no jurisdiction" concerning his CDCR 602-1 complaint (Log #603874). *Id.* On August 25, 2024, Plaintiff filed a CDCR 602-2 with the OOA appealing the outcome of his CDCR 602-1 complaint (Log #603874), which was denied by Defendant CDCR OOA Doe "claiming no jurisdiction." *Id.* at 9–10; *see also* ECF No. 7-1, at 20–21, ECF No. 7-2, at 2–3. On September 6, 2024, Plaintiff indicates he again contacted PIA Human Resources through his brother. ECF No. 7, at 10.

Prior to receiving a response to or log number concerning his CALPIA 602-1 complaint, Plaintiff was told by other inmates that Defendant PIA Rodriguez posted a copy of his CALPIA 602-1 complaint on the wall behind his desk, was "promoting other inmates to threaten the Plaintiff," and told the inmates that "he was not going to allow the 602 to be investigated." *Id.* Plaintiff asserts multiple PIA workers threatened his life, stating: "If PIA shuts down we're going to stab you," and Plaintiff was also told that PIA Rodriguez fired him in retaliation for his CALPIA complaint. *Id.*

On September 10, 2024, Defendant Harlan responded and stated Plaintiff had not followed the correct process for his CALPIA 602-1 complaint, and on September 24, 2024, Defendants Does OOG denied Plaintiff's CALPIA 602-1 complaint (Log #626360), stating "no jurisdiction." *Id.* at 11. When Plaintiff asked Defendants Jorge, Moses, Luna and correctional officer Rodriguez who the CALPIA 602-1 should be filed with and who the

CALPIA grievance coordinator was, they each told him it was the RJD-CF OOG. *Id.* Plaintiff claims when other inmates asked Luna about the procedure to file a CALPIA 602-1, Luna "either didn't know or refused to tell them." *Id.* at 12. On October 7, 2024, Plaintiff filed a second CALPIA 602-1 complaint (Log #635758) to attempt to find out how to obtain the correct forms and procedure. *Id.* at 11; *see also* ECF No. 7-2, at 16.

     Plaintiff claims PIA "retaliated" by taking his gate pass and refusing to unassign him, which would have allowed him to get a new job, and that PIA Rodriguez lied and put on Plaintiff's timecards that he was refusing to work. ECF No. 7, at 12. On October 11, 2024, Defendant Doe OOG again screened out Plaintiff's second CALPIA 602-1 complaint (Log #635758), stating "no jurisdiction." *Id.*; *see also* ECF No. 7-2, at 19. On October 18, 2024, Plaintiff filed a CDCR 602-2 appeal form with the OOA and asserted it was a CALPIA 602-2 appeal since PIA "refused" to provide him with the proper form. ECF No. 7 at 12; *see also* ECF No. 7-2, at 22–23. In that same 602-2 appeal filing, Plaintiff also asked why his earlier CALPIA 602-1 (Log #626360) had not been screened out, but that 602-2 was never answered. *Id.* Plaintiff alleges Defendant OOA Delgado "just denied" his second CALPIA 602-1 (Log #635758) instead of informing Plaintiff how to process it. ECF No. 7, at 13; *see also* ECF No. 7-2, at 25–26. Plaintiff again tried to exhaust administrative remedies on December 10, 2024, filing another CDCR 602-1 with the Office of Internal Affairs, Southern Region and attaching copies of his prior CDCR and CALPIA 602-1's and 602-2's, which Defendant Charles Contreras "refused to investigate" and returned to Defendant Warden Acevedo on January 27, 2025. ECF No. 7, at 13; *see also* ECF No. 7-3, at 2–44, ECF No. 7-4, at 2–3. Defendant RJD-CF OOG Doe gave Plaintiff's separate "grievance or request for reasonable accommodation" on an unspecified matter a CDCR Log #710622 with a due date of May 13, 2025, and Plaintiff asserts RJD-CF OOG Doe has refused to answer "all" his inquiries. ECF No. 7, at 14; *see* ECF No. 7-4, at 5.

     Plaintiff separately asserts that on October 6, 2023, Defendant CDCR Secretary Macomber put out a memorandum that inmates' wages would increase statewide on April 1, 2024, but Plaintiff's PIA "pay rates were never changed." ECF No. 7, at 14. Plaintiff

6

25cv1224-LL-VET

inquired with Defendants PIA Supervisors Jorge, Luna, Moses and PIA Rodriguez about the lack of pay raise and filed a CDCR 602-1 (Log # 600741) on the matter which was denied by Doe OOG for "no jurisdiction." *Id.* at 14–15; *see also* ECF No. 7-4, at 7–10. Plaintiff's subsequent August 26, 2024, CDCR 602-2 appeal (Log # 600741) was denied on October 18, 2024, by Defendant OOA Delgado. ECF No. 7, at 15; *see* ECF No. 7-4, at 11–17.

Plaintiff presently alleges (1) an Eighth Amendment violation for deliberate indifference to his safety in forcing Plaintiff to ride on the back of the forklift without regard for the risk of harm, (2) a First Amendment violation for retaliation against him for filing grievances arising from the forklift incident, (3) a Fourteenth Amendment due process violation for an "atypical and significant hardship" arising from the "forced unsafe labor and subsequent retaliation" and (4) a claim of "supervisory liability" arising from the Warden's inaction, failure to train, and deliberate indifference with respect to the unsafe labor practices. ECF No. 7, at 15–19.

Plaintiff sues all named Defendants in their individual capacities, *see id.* at 2–3, and seeks (1) a declaratory judgment that the Defendants' actions violated Plaintiff's Constitutional rights, (2) injunctive relief barring RJD-CF staff from ordering prisoners to ride forklifts, (3) compensatory, nominal, and punitive damages, the latter with interest due to the failure to institute pay raises ordered by CDCR, (4) costs, fees, any other relief the Court finds appropriate and (5) a jury trial. *Id.* at 19–20.

### C.  Discussion

#### 1.  Eighth Amendment (Claim 1)

Plaintiff alleges "Defendants forced Plaintiff to engage in conduct that violated known workplace safety standards" and further alleges Defendants "were subjectively aware of the danger" evidenced by their admonition to him: "Don't fall off – You can die." *Id.* at 16. Plaintiff generally asserts "[t]he deprivation was objectively serious" and "expos[ed] [him] to a substantial risk of harm" and Defendants "acted with deliberate indifference to [his] health and safety." *Id.*

As Plaintiff was instructed in the prior dismissal Order, *see* ECF No. 4, at 6–7, "a prison official violates the Eighth Amendment when two requirements are met. First, the deprivation alleged must be, objectively, 'sufficiently serious,'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)), and the Plaintiff must also allege the prison official had a "sufficiently culpable state of mind," that is, "one of 'deliberate indifference' to inmate health or safety." *Id.* (quoting *Wilson*, 501 U.S. at 302–03). Again, "[a] prison official must "know[] of and disregard[] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Plaintiff's allegations in the FAC as to Claim 1 are again insufficient to state a federal constitutional violation under the Eighth Amendment. Upon review, Plaintiff now asserts facts plausibly alleging that Defendants John Doe Maintenance Man forklift driver and correctional officer Rodriguez, who he alleges ordered him to "climb onto the back" of the forklift to act as a counterweight to the machinery being moved, and Jorge, Moses, and Luna, who, along with the forklift driver and CO Rodriguez, each told him "don't fall off" the forklift or he could "die," ECF No. 1, at 4–5, had a "sufficiently culpable state of mind" in directing Plaintiff to ride on the forklift. *Farmer*, 511 U.S. at 834.

However, Plaintiff still fails to plausibly allege the alleged deprivation was "objectively, 'sufficiently serious.'" *Id.* (quoting *Wilson*, 501 U.S. at 298). As the Court previously and similarly found when dismissing Plaintiff's original Complaint, *see* ECF No. 4, at 7, the FAC again fails to set forth facts demonstrating that Plaintiff suffered a sufficiently grave physical injury due to a Defendant's deliberate indifference to the substantial or excessive risk of serious harm. *See Oliver v. Keller*, 289 F.3d 623, 627 (9th Cir. 2002) (holding that the PLRA "requires a prior showing of physical injury that need not be significant but must be more than *de minimis*."); *see also Goode v. Canedo*, S.D. Cal. Case No. 21-cv-2054-GPC-KSC, 2022 WL 16753312, at *6 (S.D. Cal. Nov. 7, 2022) ("The threshold of physical injury necessary is not specified in the PLRA, but courts have

interpreted this to require physical injury more than *de minimis*.") (citing *Oliver*, 289 F.3d at 628 (9th Cir. 2002)).

Here, Plaintiff has failed to cure the defect of pleading with respect to any injury suffered, *see* ECF No. 4, at 7, as the FAC fails to allege *any* actual physical injury resulting from Plaintiff's directed ride on the forklift. *See generally* ECF No. 7. Instead, Plaintiff appears to contend the lack of physical injury does not preclude recovery, as he asserts that "[t]he Prison Litigation Reform Act (PLRA) limits recovery for mental/emotional damages without a physical injury." *Id.* at 16 (citing "*Canell v. Lightner*, 143 F.3d 1259, 1263 (4th Cir. 1994) (en banc) (recognizing psychological harm from near death experience may warrant relief); *see also Thomas v. Illinois*, 697 F.3d 612 (9th Cir. 2012).").[2] Yet, *Cannell* is distinguishable from Plaintiff's situation because Cannell's claims arose *before* the passage of the PLRA and because Cannell's action involved an alleged violation of First Amendment rights, to which the physical injury provision did not apply. *See Cannell*, 143 F.3d at 1213 ("The deprivation of First Amendment rights entitles a plaintiff to judicial relief wholly aside from any physical injury he can show, or any mental or emotional injury he may have incurred.") Nor does *Thomas* assist Plaintiff's argument, as that case is factually distinguishable and involved a pest infestation in a prisoner's cell which presented not only the possibility of psychological harm, but physical harm as well. *See Thomas*, 697 F.3d at 614-16. In contrast, Plaintiff only generally alleges that he was exposed "to a substantial risk of harm" and fails to allege any *actual* harm or injury resulting from any Defendant's actions. Plaintiff's lack of contentions about any actual harm suffered do not state a claim for relief. *See Oliver*, 289 F.3d at 627; *see also Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is

---

[2] The Court notes that *Cannell*, 143 F.3d 1210 (9th Cir. 1998), *abrogation on other grounds recognized by Nealy v. Shinn*, 2024 WL 3842094 (9th Cir. 2024), which appears at 1210 rather than 1259, is also neither a Fourth Circuit case nor an *en banc* decision.

1  inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action,
2  supported by mere conclusory statements, do not suffice.").

3  Accordingly, Plaintiff's Eighth Amendment deliberate indifference claim against all
4  Defendants is again dismissed sua sponte pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b)
5  for failure to state a claim. As set forth below, Plaintiff will once more be given the option
6  to amend his Complaint to cure the pleading deficiencies of his dismissed claims or proceed
7  only with the claim which survives screening. *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039
8  (9th Cir. 2015) ("A district court should not dismiss a pro se complaint without leave to
9  amend unless 'it is absolutely clear that the deficiencies of the complaint could not be cured
10 by amendment.'"), quoting *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012).

    2.   First Amendment (Claim 2)

12 Plaintiff asserts he engaged in "protected conduct" when he filed a grievance about
13 the forklift incident, after which Defendants "took adverse action, including verbal
14 harassment, loss of job, and threats of disciplinary action" which was "linked" to the
15 grievance and resulted in Plaintiff losing a "level 3 override due to not being able to work."
16 ECF No. 7, at 17. Plaintiff contends the retaliation "chilled" his exercise of his First
17 Amendment rights and "served no legitimate correctional purpose." *Id.*

18 As Plaintiff was instructed in the prior dismissal Order, *see* ECF No. 4, at 8,
19 "[p]risoners have a First Amendment right to file grievances against prison officials and to
20 be free from retaliation for doing so," *Watison*, 668 F.3d at 1114, and "[w]ithin the prison
21 context, a viable claim of First Amendment retaliation entails five basic elements: (1) An
22 assertion that a state actor took some adverse action against an inmate (2) because of (3)
23 that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of
24 his First Amendment rights, and (5) the action did not reasonably advance a legitimate
25 correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (2005).

26 Plaintiff was previously informed that he failed to allege any Defendant took an
27 "adverse action" because of his protected conduct in filing grievances, *see* ECF No. 4, at
28 9, and Plaintiff now alleges that Defendants took actions "linked" to the grievance,

including "verbal harassment, loss of job, and threats of disciplinary action." ECF No. 7, at 17. First, Plaintiff's allegations of verbal harassment do not suffice to state a claim cognizable under 42 U.S.C. § 1983. *See Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987) ("'Verbal harassment or abuse . . . is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983.'") (quoting *Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979)).

Second, Plaintiff fails to state facts which plausibly allege the Defendants' retaliation against him for filing grievances included losing his job. Plaintiff asserts "he was also told that [PIA] Rodriguez fired him in retaliation to the complaint," ECF No. 7, at 10, but Plaintiff also states he refused to work on the "dirty" side as directed, was denied a request for a job assignment change to move away from PIA Rodriguez, and "[d]ue to the toxic behavior Plaintiff felt the only recourse was to quit his job." *Id.* at 6–8. While not entirely clear, it appears Plaintiff's refusal to work on the "dirty" side, request for a job change and decision to quit occurred sometime in August 2024, contemporaneous with the filing of his initial grievances, *see id.* at 7–9, while PIA Rodriguez posted Plaintiff's CALPIA 602-1 grievance on the wall and Plaintiff learned of PIA Rodriguez's apparent involvement in his termination in September 2024, which would have been approximately a month after Plaintiff indicates he resolved to quit of his own accord. Moreover, while the timeline is again not entirely clear, it also appears that at some point after the above events, Plaintiff learned PIA Rodriguez "lied that Plaintiff was just refusing to work on his time[]cards." *Id.* at 12. Given Plaintiff contends PIA Rodriguez "lied" and was indicating on Plaintiff's timecards that he was "just refusing to work," Plaintiff fails to plausibly allege that he in fact lost his job in retaliation for filing the grievance and did not either quit or simply refuse to work in his assigned area.

Finally, while Plaintiff does not set forth specific facts which plausibly allege any Defendants threatened *disciplinary action* in connection with the grievances he filed and instead only generally alleges he was faced with such threats, Plaintiff does set forth facts which plausibly allege he was threatened with *physical harm* due to Defendant PIA

11

1  Rodriguez's actions. Specifically, Plaintiff alleges PIA Rodriguez posted Plaintiff's
2  CALPIA 602-1 grievance on the wall behind his desk, "was promoting other inmates to
3  threaten the Plaintiff," and that "[m]ultiple PIA workers threatened the Plaintiff's life
4  stating that 'If PIA shuts down we're going to stab you." ECF No. 7, at 10.

5      The Court finds Plaintiff's allegations that he was subjected to threats of harm due
6  to PIA Rodriguez both posting his grievance and encouraging other inmates to threaten
7  him are sufficient to state a cognizable claim, given "the mere *threat* of harm can be an
8  adverse action, regardless of whether it is carried out because the threat itself can have a
9  chilling effect." *Brodheim v. Cry*, 584 F.3d 1262, 1270 (9th Cir. 2009). As Plaintiff also
10  alleges the retaliation had a chilling effect and served no legitimate correctional purpose,
11  *see id.* at 17, the Court finds Plaintiff plausibly states a First Amendment claim for
12  retaliation sufficient to survive screening against Defendant PIA Rodriguez alone. *See*
13  *Brodheim*, 584 F.3d at 1269–70 ("As we have stated multiple times, 'a retaliation claim
14  may assert an injury no more tangible than a chilling effect on First Amendment rights.'")
15  (quoting *Gomez v. Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001) and citing *Burgess v.*
16  *Moore*, 39 F.3d 216, 218 (8th Cir. 1994) ("(A) threat of retaliation is sufficient injury if
17  made in retaliation for an inmate's use of prison grievance procedures.")).

18      Accordingly, the Court sua sponte dismisses the First Amendment retaliation claim
19  against all Defendants other than PIA Rodriguez. *See* 28 U.S.C. §§ 1915(e)(2)(B)(iii) and
20  1915A(b)(2). As set forth below, Plaintiff will be given the option to amend his Complaint
21  to cure the pleading deficiencies of his dismissed claims or proceed only with the claim
22  which survives screening. *See Rosati*, 791 F.3d at 1039.

23          3.    Fourteenth Amendment (Claim 3)

24      Plaintiff contends "[t]he forced unsafe labor and subsequent retaliation imposed
25  atypical and significant hardship beyond the normal incidents of prison life" and he "was
26  compelled to perform a dangerous task not expected of other inmates, under threat of
27  punishment" in violation of due process. ECF No. 7, at 18. While Plaintiff does not
28  reference his allegations about the lack of pay raises in any of his enumerated claims, *see*

*id.* at 15–19, he seeks damages arising from the failure to pay the pay raises, *see id.* at 20, and the Court liberally construes Claim 2 as also alleging a Fourteenth Amendment due process or equal protection violation arising from the failure to extend pay raises to PIA workers such as himself. *See Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987) ("The Supreme Court has instructed the federal courts to liberally construe the 'inartful pleading' of pro se litigants.") (quoting *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam)).

As the Court previously noted in the prior Order dismissing the prior iteration of this claim, *see* ECF No. 4, at 8, liberty interests protected by the Due Process Clause for incarcerated persons "will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Plaintiff fails to plausibly allege a due process claim based on either the allegedly unsafe labor or subsequent retaliation. *See id.* at 480 ("The Due Process Clause standing alone confers no liberty interest in freedom from state action taken 'within the sentence imposed.'") (additional citations and quote marks omitted). Instead, Plaintiff's allegations about the forklift task and being compelled to perform it are addressed above with respect to his Eighth Amendment claim and his allegation of subsequent retaliation and threats are addressed above with respect to his First Amendment claim.

Next, Plaintiff's FAC names as Defendants numerous personnel who handled his grievances, including several individuals from OOG, OOA, and other divisions, and generally asserts Defendants "deliberately obstructed Plaintiff's right to a grievance process, leaving him without legal recourse" and "repeatedly stonewalled Plaintiff preventing him from exhausting administrative remedies," ECF No. 7, at 13, but Plaintiff does not make any factual allegations as to how any of these Defendants violated his federal Constitutional rights. Again, in the prior Order, *see* ECF No. 4 at 8, the Court instructed Plaintiff that any asserted failure to properly process his grievances or complaints does not state a due process claim given "inmates lack a separate constitutional entitlement to a

specific prison grievance procedure." *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003); *see also Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) ("There is no legitimate claim of entitlement to a grievance procedure.") In the FAC, Plaintiff did not specifically re-raise a claim of due process based on the denial or processing of his grievances, appears to acknowledge the substance of the Court's prior Order and instead appears to recite his filed grievances in support of his retaliation claim. *See* ECF No. 7, at 18 (in which Plaintiff argues that while "the underlying grievance system may be legally irrelevant – but retaliation for using it is not.") That said, even to the extent Plaintiff seeks to re-raise a Fourteenth Amendment claim based on Defendants' failure to properly process his complaints or grievances, he again does not state a due process claim for the reasons stated in the prior Order. *See* ECF No. 4 at 8, citing *Ramirez*, 334 F.3d at 860; *Mann*, 855 F.2d at 640.

Finally, to the extent Plaintiff seeks to raise a claim concerning the failure to extend raises to PIA workers such as himself, he fails to state a Fourteenth Amendment due process violation. *See Sandin*, 515 U.S. at 480 ("The Due Process Clause standing alone confers no liberty interest in freedom from state action taken 'within the sentence imposed.'") (additional citations and quote marks omitted). Nor do Plaintiff's allegations plausibly state an equal protection claim under the Fourteenth Amendment. "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). "To state a claim for violation of the Equal Protection Clause, a plaintiff must show that the defendant acted with an intent or purpose to discriminate against him based upon his membership in a protected class." *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003) (citation omitted). But the Ninth Circuit has repeatedly held that inmates or prisoners are not themselves a protected class. *See e.g. Webber v. Crabtree*, 158 F.3d 460, 461 (9th Cir. 1998) (Federal Prison Camp inmates were "not members of a suspect class"

for equal protection purposes); *see also Shallowhorn v. Medina*, 572 Fed. Appx. 545, 547 (9th Cir. 2014) (district court properly dismissed equal protection clause claims in relevant part because inmates convicted of certain crimes "do[] not constitute a protected class").

Plaintiff's Fourteenth Amendment due process and equal protection claims against all Defendants are dismissed sua sponte under 28 U.S.C. §§ 1915(e)(2) & 1915A(b) for failure to state a claim. As set forth below, Plaintiff will be given the option to amend his Complaint to cure the pleading deficiencies of his dismissed claims or proceed only with the claim which survives screening. *See Rosati*, 791 F.3d at 1039.

### 4. Supervisory Liability (Claim 4)

To the extent Plaintiff again seeks to hold the Warden of RJD liable for any asserted constitutional deprivations, he also again fails to state a claim for relief. As Plaintiff was previously instructed, *see* ECF No. 4, at 9–10, "[a] supervisory official may be held liable under § 1983 only if 'there exists either (1) his or her personal involvement in the constitutional violation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation,'" *Keates v. Koile*, 883 F.3d 1228, 1242–43 (9th Cir. 2018) (quoting *Starr v. Baca,* 652 F.3d 1202, 1207 (9th Cir. 2011)), and "[i]n a section 1983 claim, a supervisor is liable for the acts of his subordinates if the supervisor participated in or directed the violations, or knew of the violations of subordinates and failed to act to prevent them." *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009) (internal quote marks omitted).

Here, Plaintiff only offers conclusory assertions that Warden Acevedo "had knowledge or should have had knowledge of widespread unsafe labor practices within the PIA program as he t[o]ured through PIA every week," generally "alleges a causal connection between the Warden's failure to supervise/train and the constitutional violations by staff under his command" and alleges "[t]he Warden's inaction and deliberate indifference support supervisory liability" under Ninth Circuit case law. ECF No. 7, at 19 (citation omitted). However, Plaintiff fails to set forth any specific facts which plausibly allege the Warden had actual knowledge of the specific labor practices Plaintiff complains

of here and instead only generally asserts the Warden either knew or should have known of those practices due to his weekly tour through PIA. Nor does Plaintiff set forth specific facts alleging a causal connection between the Warden's purported conduct and the asserted constitutional violation, and his conclusory contentions are insufficient to state a claim for relief. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.")

To the extent Plaintiff seeks to proceed with a due process claim against the Warden for any potential actions or inaction with respect to the returned grievances, *see* ECF No. 7, at 13, as Plaintiff was previously instructed, *see* ECF No. 4, at 8, as "inmates lack a separate constitutional entitlement to a specific prison grievance procedure," *Ramirez*, 334 F.3d at 860; *see also Mann*, 855 F.2d at 640, any asserted failure by the Warden to properly process his grievances and complaints also does not state a claim under 42 U.S.C. § 1983.

Accordingly, the Warden must again be dismissed from this action.

### 5. Plaintiff's Options

Because the Court has determined that Plaintiff's First Amendment retaliation claim against Defendant PIA Rodriguez survives the *sua sponte* screening process but Plaintiff's remaining claims against the remaining Defendants do not, the Court gives Plaintiff the option to either (1) notify the Court of his intent to proceed only with the First Amendment retaliation claim against Defendant PIA Rodriguez which survived screening or (2) file a Second Amended Complaint that attempts to correct the deficiencies of pleading identified in this Order. <u>Plaintiff must choose one of those two options within forty-five (45) days from the date this Order is filed</u>. If Plaintiff notifies the Court that he wishes to proceed only with the claim which survived screening, the Court will issue an Order directing the Clerk to issue the summons as to Defendant PIA Rodriguez and will direct the U.S. Marshal to effect service of the summons and Complaint on that Defendant, and all remaining claims and Defendants will remain dismissed from this action.

///

///

## II. CONCLUSION

Good cause appearing, the Court:

(1) **DISMISSES** all claims against all Defendants in the FAC sua sponte pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b) for failing to state a claim upon which relief may be granted with the exception of the First Amendment retaliation claim against Defendant PIA Rodriguez.

(2) **GRANTS** Plaintiff leave to either: (1) file a Notice of Intent to Proceed with his First Amendment retaliation claim against Defendant PIA Rodriguez only; or (2) file a Second Amended Complaint correcting the deficiencies of pleading identified in this Order. By **January 26, 2026**, Plaintiff must effectuate one of these two options.

If Plaintiff chooses to proceed only with the claim which survived screening, the Court will issue an Order directing the Clerk to issue the summons as to Defendant PIA Rodriguez and will direct the U.S. Marshal to effect service of the summons and Complaint on that Defendant and all remaining claims against all remaining Defendants will remain dismissed. If Plaintiff chooses to file an amended pleading, his Second Amended Complaint must be complete by itself without reference to any prior version of his pleading, and any defendants not named and any claims not re-alleged will be considered waived. *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner and Co. Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled").

**IT IS SO ORDERED.**

Dated: December 12, 2025

_____
Honorable Linda Lopez
United States District Judge